EXHIBIT A

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC  20240

June 1, 2021

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

DECISION

Knik Arm Services LLC          :          Oil and Gas Lease
56 Oakwell Farms Parkway       :          AA095895
San Antonio, Texas  78218      :
                               :
                               :
                               :
                               :

### Suspension of Operations and Production

On January 20, 2021, Executive Order 13990 directed that the Secretary of the Interior "place a temporary moratorium on activities of the Federal Government relating to the Coastal Plain Oil and Gas Leasing Program" and "review the program and … conduct a new, comprehensive analysis of the potential environmental impacts of the oil and gas program."

After conducting the required review of the program, the Department identified defects in the underlying record supporting the leases, including, but not limited to: insufficient analysis under the National Environmental Policy Act (NEPA), including failure to adequately analyze a reasonable range of alternatives in the environmental impact statement (EIS); and failure in the August 17, 2020, Record of Decision (ROD) to properly interpret Section 20001 of Public Law 115-97 (Tax Act).  In addition to these specific defects, the Department has identified several areas for which additional analysis may either address a potential legal defect or, at a minimum, serve NEPA's purpose to meaningfully inform the decisionmaker as to the environmental consequences of federal action.  These include, but are not limited to, the EIS's treatment of foreign greenhouse gas (GHG) emissions and compliance with section 810 of the Alaska National Interest Lands Conservation Act (ANILCA).  Further, any new NEPA analysis involving an additional alternative may also involve connected reviews, such as under section 106 of the National Historic Preservation Act and consultation under section 7 of the Endangered Species Act.

Specifically, the Coastal Plain Leasing Program EIS failed to analyze a reasonable range of alternatives in that it did not analyze an alternative, besides the no action alternative, that

involved fewer than 2,000 acres of surface development.  The Tax Act provides for authorization of *up to* 2,000 acres to be covered by "production and support facilities."[1]  However, inclusion of the phrase "up to" indicates that less than 2,000 acres may be authorized in appropriate circumstances, such as for alternatives that make large areas unavailable for leasing or surface development and thus may require fewer production and support facilities.  The explanation in the ROD for not considering such an alternative – that the Tax Act provides a *mandate* to the BLM requiring it to approve production and support facilities up to that limit – is both implausible and contrary to Congressional intent, which is itself a legal error.

While not identified as a legal defect at this point, the Department recognizes that the recent Ninth Circuit opinion involving the Liberty Project in Alaska, *Center for Biological Diversity v. Bernhardt*, issued on December 7, 2020, has implications for the analysis of foreign greenhouse gas emissions in many of its programs and projects, including those already in litigation, like the Coastal Plain Oil and Gas Leasing Program.  The Department is carefully evaluating its approach to this issue and may later identify this issue as an additional specific legal error depending on the resolution of pending court cases involving similar issues.

Based on the identified defects noted above with the NEPA documents underlying the competitive lease sale that resulted in the issuance of the lease referenced above, and in exercise of the Department's inherent authority to correct legal errors, the Department has concluded that it is necessary to suspend the above-referenced lease(s) and complete further environmental analysis under NEPA, consistent with the direction provided in Executive Order 13990 and Secretarial Order 3401.  The BLM will undertake this additional NEPA analysis to determine whether the leases should be reaffirmed, voided or subject to additional mitigation measures. The BLM will publish a notice of intent to begin this process to undertake additional analysis, complete necessary consultation, and correct defects in the EIS and ROD.  When complete, the BLM will issue a new decision concerning this suspension of operations and production (SOP) of the above-referenced lease.

This SOP is effective the first day of June 2021.  While this SOP is in place, no lease operations may transpire on the leases, the terms of the leases are tolled, and lease rentals are suspended.  If you have any questions, please contact Nada Wolff Culver at nculver@blm.gov.

Sincerely,

Laura Daniel-Davis
Digitally signed by Laura
Daniel-Davis
Date: 2021.06.01
16:24:26 -04'00'

Laura Daniel-Davis
Principal Deputy Assistant Secretary
Land and Minerals Management

---

[1] Section 20001(c)(3) of the Tax Act provides: "SURFACE DEVELOPMENT—In administering this section, the Secretary shall authorize up to 2,000 surface acres of Federal land on the Coastal Plain to be covered by production and support facilities (including airstrips and any area covered by gravel berms or piers for support of pipelines) during the term of the leases under the oil and gas program under this section."

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

**June 1, 2021**

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

### DECISION

| | | |
|---|---|---|
| Regenerate Alaska Inc. | : | Oil and Gas Lease |
| 1300 Post Oak Blvd. | : | AA095899 |
| Suite 2400 | : | |
| Houston, Texas 77056 | : | |
| | : | |
| | : | |

### Suspension of Operations and Production

On January 20, 2021, Executive Order 13990 directed that the Secretary of the Interior "place a temporary moratorium on activities of the Federal Government relating to the Coastal Plain Oil and Gas Leasing Program" and "review the program and … conduct a new, comprehensive analysis of the potential environmental impacts of the oil and gas program."

After conducting the required review of the program, the Department identified defects in the underlying record supporting the leases, including, but not limited to: insufficient analysis under the National Environmental Policy Act (NEPA), including failure to adequately analyze a reasonable range of alternatives in the environmental impact statement (EIS); and failure in the August 17, 2020, Record of Decision (ROD) to properly interpret Section 20001 of Public Law 115-97 (Tax Act). In addition to these specific defects, the Department has identified several areas for which additional analysis may either address a potential legal defect or, at a minimum, serve NEPA's purpose to meaningfully inform the decisionmaker as to the environmental consequences of federal action. These include, but are not limited to, the EIS's treatment of foreign greenhouse gas (GHG) emissions and compliance with section 810 of the Alaska National Interest Lands Conservation Act (ANILCA). Further, any new NEPA analysis involving an additional alternative may also involve connected reviews, such as under section 106 of the National Historic Preservation Act and consultation under section 7 of the Endangered Species Act.

Specifically, the Coastal Plain Leasing Program EIS failed to analyze a reasonable range of alternatives in that it did not analyze an alternative, besides the no action alternative, that involved fewer than 2,000 acres of surface development. The Tax Act provides for authorization

of *up to* 2,000 acres to be covered by "production and support facilities."[1]  However, inclusion of the phrase "up to" indicates that less than 2,000 acres may be authorized in appropriate circumstances, such as for alternatives that make large areas unavailable for leasing or surface development and thus may require fewer production and support facilities.  The explanation in the ROD for not considering such an alternative – that the Tax Act provides a *mandate* to the BLM requiring it to approve production and support facilities up to that limit – is both implausible and contrary to Congressional intent, which is itself a legal error.

While not identified as a legal defect at this point, the Department recognizes that the recent Ninth Circuit opinion involving the Liberty Project in Alaska, *Center for Biological Diversity v. Bernhardt*, issued on December 7, 2020, has implications for the analysis of foreign greenhouse gas emissions in many of its programs and projects, including those already in litigation, like the Coastal Plain Oil and Gas Leasing Program.  The Department is carefully evaluating its approach to this issue and may later identify this issue as an additional specific legal error depending on the resolution of pending court cases involving similar issues.

Based on the identified defects noted above with the NEPA documents underlying the competitive lease sale that resulted in the issuance of the lease referenced above, and in exercise of the Department's inherent authority to correct legal errors, the Department has concluded that it is necessary to suspend the above-referenced lease(s) and complete further environmental analysis under NEPA, consistent with the direction provided in Executive Order 13990 and Secretarial Order 3401.  The BLM will undertake this additional NEPA analysis to determine whether the leases should be reaffirmed, voided or subject to additional mitigation measures. The BLM will publish a notice of intent to begin this process to undertake additional analysis, complete necessary consultation, and correct defects in the EIS and ROD.  When complete, the BLM will issue a new decision concerning this suspension of operations and production (SOP) of the above-referenced lease.

This SOP is effective the first day of June 2021.  While this SOP is in place, no lease operations may transpire on the leases, the terms of the leases are tolled, and lease rentals are suspended.  If you have any questions, please contact Nada Wolff Culver at nculver@blm.gov.

Sincerely,

Laura Daniel-Davis
Digitally signed by Laura
Daniel-Davis
Date: 2021.06.01
16:28:26 -04'00'

Laura Daniel-Davis
Principal Deputy Assistant Secretary
Land and Minerals Management

---

[1] Section 20001(c)(3) of the Tax Act provides: "SURFACE DEVELOPMENT—In administering this section, the Secretary shall authorize up to 2,000 surface acres of Federal land on the Coastal Plain to be covered by production and support facilities (including airstrips and any area covered by gravel berms or piers for support of pipelines) during the term of the leases under the oil and gas program under this section."

# United States Department of the Interior

OFFICE OF THE SECRETARY

Washington, DC  20240

June 1, 2021

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

DECISION

| Alaska Industrial Development | : | Oil and Gas Leases |
| and Export Authority | : | AA095889 |
| 813 West Northern Lights Blvd. | : | AA095890 |
| Anchorage, Alaska  99503 | : | AA095893 |
| | : | AA095897 |
| | : | AA095898 |
| | : | AA095900 |
| | : | AA095901 |

Suspension of Operations and Production

On January 20, 2021, Executive Order 13990 directed that the Secretary of the Interior "place a temporary moratorium on activities of the Federal Government relating to the Coastal Plain Oil and Gas Leasing Program" and "review the program and … conduct a new, comprehensive analysis of the potential environmental impacts of the oil and gas program."

After conducting the required review of the program, the Department identified defects in the underlying record supporting the leases, including, but not limited to: insufficient analysis under the National Environmental Policy Act (NEPA), including failure to adequately analyze a reasonable range of alternatives in the environmental impact statement (EIS); and failure in the August 17, 2020, Record of Decision (ROD) to properly interpret Section 20001 of Public Law 115-97 (Tax Act).  In addition to these specific defects, the Department has identified several areas for which additional analysis may either address a potential legal defect or, at a minimum, serve NEPA's purpose to meaningfully inform the decisionmaker as to the environmental consequences of federal action.  These include, but are not limited to, the EIS's treatment of foreign greenhouse gas (GHG) emissions and compliance with section 810 of the Alaska National Interest Lands Conservation Act (ANILCA).  Further, any new NEPA analysis involving an additional alternative may also involve connected reviews, such as under section 106 of the National Historic Preservation Act and consultation under section 7 of the Endangered Species Act.

Specifically, the Coastal Plain Leasing Program EIS failed to analyze a reasonable range of alternatives in that it did not analyze an alternative, besides the no action alternative, that involved fewer than 2,000 acres of surface development. The Tax Act provides for authorization of *up to* 2,000 acres to be covered by "production and support facilities."[1] However, inclusion of the phrase "up to" indicates that less than 2,000 acres may be authorized in appropriate circumstances, such as for alternatives that make large areas unavailable for leasing or surface development and thus may require fewer production and support facilities. The explanation in the ROD for not considering such an alternative – that the Tax Act provides a *mandate* to the BLM requiring it to approve production and support facilities up to that limit – is both implausible and contrary to Congressional intent, which is itself a legal error.

While not identified as a legal defect at this point, the Department recognizes that the recent Ninth Circuit opinion involving the Liberty Project in Alaska, *Center for Biological Diversity v. Bernhardt*, issued on December 7, 2020, has implications for the analysis of foreign greenhouse gas emissions in many of its programs and projects, including those already in litigation, like the Coastal Plain Oil and Gas Leasing Program. The Department is carefully evaluating its approach to this issue and may later identify this issue as an additional specific legal error depending on the resolution of pending court cases involving similar issues.

Based on the identified defects noted above with the NEPA documents underlying the competitive lease sale that resulted in the issuance of the lease(s) referenced above, and in exercise of the Department's inherent authority to correct legal errors, the Department has concluded that it is necessary to suspend the above-referenced lease(s) and complete further environmental analysis under NEPA, consistent with the direction provided in Executive Order 13990 and Secretarial Order 3401. The BLM will undertake this additional NEPA analysis to determine whether the leases should be reaffirmed, voided or subject to additional mitigation measures. The BLM will publish a notice of intent to begin this process to undertake additional analysis, complete necessary consultation, and correct defects in the EIS and ROD. When complete, the BLM will issue a new decision concerning this suspension of operations and production (SOP) of the above-referenced leases.

This SOP is effective the first day of June 2021. While this SOP is in place, no lease operations may transpire on the leases, the terms of the leases are tolled, and lease rentals are suspended. If you have any questions, please contact Nada Wolff Culver at nculver@blm.gov.

Sincerely,

Laura Daniel-Davis

Digitally signed by Laura Daniel-Davis
Date: 2021.06.01 16:17:14 -04'00'

Laura Daniel-Davis
Principal Deputy Assistant Secretary
Land and Minerals Management

---

[1] Section 20001(c)(3) of the Tax Act provides: "SURFACE DEVELOPMENT—In administering this section, the Secretary shall authorize up to 2,000 surface acres of Federal land on the Coastal Plain to be covered by production and support facilities (including airstrips and any area covered by gravel berms or piers for support of pipelines) during the term of the leases under the oil and gas program under this section."