No. 24-1017C
(Senior Judge Bruggink)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

STATE OF ALASKA,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

SOSUN BAE
Senior Trial Counsel
PIERCE ANON
Law Clerk
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7568
Facsimile: (202) 514-8640
E-mail: sosun.bae@usdoj.gov

Dated: January 17, 2025                    *Attorneys for Defendant*

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

I.    For Purposes Of 28 U.S.C. § 1500, The State Of Alaska And AIDEA Should Both Be Considered The "Plaintiff" .......................................................................1

    A.  State Law Demonstrates A Unity Of Identity Between Alaska And AIDEA .....2

    B.  Federal Law Also Demonstrates That AIDEA Is An Arm Of The State............6

    C.  AIDEA Is In Privity With The State Of Alaska For Purposes Of Res Judicata ...................................................................................................9

    D.  Diversity Jurisdiction Cases Do Not Aid Plaintiff...........................................11

II.    *AIDEA II* And This Case Are Based On Similar Operative Facts .........................12

III.    Plaintiff Does Not Have A Viable Breach-Of-Contract Claim ..............................14

IV.    There Is No Plausible Claim For A Breach Of The Duty Of Good Faith And Fair Dealing.....................................................................................................16

V.    Alaska's Takings Claim Does Not Reach The Threshold Of Plausibility .............18

CONCLUSION..............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                            **Page(s)**

*Adams v. United States*,
   391 F.3d 1212 (Fed. Cir. 2004)................................................................................. 18, 19

*Adden v. Middlebrooks*,
   688 F.2d 1147 (7th Cir. 1982) ........................................................................................ 8

*AIDEA v. Dep't of Interior*,
   No. 3:24-cv-00051-SLG (D. Alaska)...................................................................... *passim*

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
   5 F.3d 378 (9th Cir. 1993) ......................................................................................... 5, 6

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
   834 F. Supp. 1216 (D. Alaska 1991), *aff'd*, 5 F.3d 378 (9th Cir. 1993).................................... 7

*Alaska Comm. Fishing & Agric. Bank v. O/S Alaska Coast*,
   715 P.2d 707 (Alaska 1986)........................................................................................... 2

*Alaska Fed'n for Cmty. Self-Reliance v. Alaska Pub. Utilities Comm'n*,
   879 P.2d 1015 (Alaska 1994)......................................................................................... 7

*Alaska Ret. Mgmt. Bd. on behalf of Alaska Pub. Employees' Ret. Sys. v. Mercer (US), Inc.*,
   No. 1:08-CV-0002-HRH, 2008 WL 11338014 (D. Alaska Nov. 7, 2008).......................... 7, 8

*Alaska State Housing Authority v. Dixon*,
   496 P.2d 649 (Alaska 1972)........................................................................................... 3

*Alaska State Operated School System v. Mueller*,
   536 P.2d 99 (Alaska 1975)............................................................................................ 3

*Amber Res. Co. v. United States*,
   538 F.3d 1358 (Fed. Cir. 2008)..................................................................................... 15

*Befitel v. Global Horizons, Inc.*,
   461 F. Supp. 2d 1218 (D. Hawaii 2006) .......................................................................... 8

*Bell/Heery v. United States*,
   106 Fed. Cl. 300 (2012) .............................................................................................. 18

*Benchmark Res. Corp. v. United States*,
   74 Fed. Cl. 458 (2006) ................................................................................................ 19

*Blake v. Kline*,
   612 F.2d 718 (3d Cir. 1979) ............................................................................... 8

*Centex Corp. v. United States*,
   395 F.3d 1283 (Fed. Cir. 2005) ........................................................................ 17

*Century Expl. New Orleans, LLC v. United States*,
   110 Fed. Cl. 148 (Fed. Cl. 2013) ..................................................................... 17

*Commonwealth Edison Co. v. United States*,
   271 F.3d 1327 (Fed. Cir. 2001) ................................................................... 18, 19

*DeArmond v. Alaska State Dev. Corp.*,
   376 P.2d 717 (Alaska 1962) ............................................................................ 2, 3

*Devon Energy Corp. v. United States*,
   45 Fed. Cl. 519 (1999) ..................................................................................... 19

*Dingley v. Oler*,
   117 U.S. 490 (1886) .................................................................................... 15, 16

*Dobyns v. United States*,
   915 F.3d 733 (Fed. Cir. 2019) ......................................................................... 17

*Franconia Assocs. v. United States*,
   536 U.S. 129 (2002) ......................................................................................... 15

*Hess v. Port Auth. Trans-Hudson Corp.*,
   115 S. Ct. 394 (1994) ......................................................................................... 6

*Kingman Reef Atoll Invs., L.L.C. v. United States*,
   103 Fed. Cl. 660 (2012) ..................................................................................... 1

*Klamath Irrigation Dist. v. United Stat*es,
   113 Fed. Cl. 688 (2013) ..................................................................................... 1

*Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*,
   440 U.S. 391 (1979) ......................................................................................... 10

*Lakeshore Eng'g Servs., Inc. v. United States*,
   748 F.3d 1341 (Fed. Cir. 2014) ....................................................................... 18

*Lapides v. Board of Regents of the Univ. Sys. of Georgia*,
   535 U.S. 613 (2002) ........................................................................................... 9

*Metcalf Constr. Co. v. United States*,
  742 F.3d 984 (Fed. Cir. 2014) ................................................................. 17

*M-K Eng'g Co. v. Alaska Power Auth.*,
  662 F. Supp. 303 (D. Alaska 1986) ............................................................ 8

*P.R. Ports Auth. v. Fed. Mar. Comm'n*,
  531 F3d 868 (D.C. Cir. 2008) ............................................................... 6, 7

*Piszel v. United States*,
  833 F.3d 1366 (Fed. Cir. 2016) ............................................................. 20

*Precision Pine & Timber, Inc. v. United States*,
  596 F.3d 817 (Fed. Cir. 2010) .............................................................. 17

*Regents of the Univ. of California v. Doe*,
  519 U.S. 425 (1997) ............................................................................. 6

*Snyder & Assocs. Acquisitions LLC v. United States*,
  133 Fed. Cl. 120 (2017) ...................................................................... 20

*Stockton East Water Dist. v. United States*,
  583 F.3d 1344 (Fed. Cir. 2009) ............................................................. 20

*Trusted Integration, Inc. v. United States*,
  659 F.3d 1159 (Fed. Cir. 2011) ..................................................... 9, 10, 12

*United States v. Dekonty Corp.*,
  922 F.2d 826 (Fed. Cir. 1991) .............................................................. 16

*United States v. Sperry Corp.*,
  493 U.S. 52 (1989) ............................................................................. 19

*United States v. Tohono O'Odham Nation*,
  563 U.S. 307 (2011) ....................................................................... *passim*

*Univ. of Alaska v. Nat'l Aircraft Leasing, Ltd.*,
  536 P.2d 121 (Alaska 1975) ................................................................... 3

*Univ. of S. Fla. Bd. of Trustees v. Co Mentis, Inc.*,
  861 F.3d 1234 (11th Cir. 2017) .............................................................. 8

**Statutes**

AS § 29.45.030(a) ................................................................................................. 5

AS § 44.88.010(a)(9) ............................................................................................ 2

AS § 44.88.020 .................................................................................................... 4

AS § 44.88.030 .................................................................................................... 4

AS § 44.88.050(a) ................................................................................................ 4

AS § 44.88.070 .................................................................................................... 7

AS § 44.88.088 .................................................................................................. 11

AS § 44.88.120(b) ................................................................................................ 5

AS § 44.88.140(a) ................................................................................................ 5

AS § 44.88.190(a) ................................................................................................ 2

AS § 44.88.190(b) ................................................................................................ 5

Tax Act § 20001(b)(4) ....................................................................................... 20

5 U.S.C. § 588 ................................................................................................... 13

28 U.S.C. § 1500 .......................................................................................... *passim*

**Regulations**

43 C.F.R. § 3136.3 (2024) ................................................................................ 15

**Other Authorities**

AIDEA,
 *Audit Control No. 04-30093-20* (2020) *available at*
 http://legaudit.akleg.gov/slug/04-30093-20-2/ ......................................... 4

AIDEA,
 *Cost and Financial Performance Report 2022* (2022) *available at*
 http://static1.squarespace.com/

static/62cca323b85faf15e3ca3ce8/t/63320dbc1620c750ff2654f5/1664224705415/FINAL_AI
DEA+Cost+and+Financial+Performance+Report_+2022.pdf ................................................... 4

AIDEA,
    *FAQ available at* http://www.aidea.org/Quick-Links/FAQ ................................................... 11

Alaska Assistant Attorney General,
    *Religious Organizations Participating in AIDEA Programs*, (Jan. 12, 2000) *available at*
    http://law.alaska.gov/pdf/opinions/opinions_2000/00-001_661970624.pdf ............................. 5

Economic Development Financing, *available at*
    https://www.akleg.gov/basis/get_documents.asp?session=32&docid=81380 .......................... 1

Loan Dashboard Report,
    *AIDEA Revolving Fund*, AIDEA Board Meeting, October 25, 2023, Agenda *available at*
    http://www.aidea.org/Portals/0/Meeting%20Docs/2023BoardMeetings/
    102523/7._B_Loan_Dashboard_Report_10252023.pdf ........................................................... 7

Nathaniel Herz,
    *Response to Public Records Request* (Apr. 12, 2023) *available at*
    http://www.documentcloud.org/documents/23782265-nathaniel-herz-prr-response-41223 ...... 4

Defendant, the United States, respectfully submits this reply in support of our motion to dismiss. Plaintiff, the state of Alaska, fails to rebut our showing that 28 U.S.C. § 1500 bars this Court from entertaining plaintiff's complaint. Nor can plaintiff demonstrate that it has stated valid claims for relief under its counts for breach of contract, breach of the implied duty of good faith and fair dealing, or a taking. Accordingly, this Court should dismiss plaintiff's complaint.

## ARGUMENT

I.    For Purposes Of 28 U.S.C. § 1500, AIDEA And The State Of Alaska Should Both Be Considered The "Plaintiff"

For purposes of 28 U.S.C. § 1500, the Alaska Industrial Development and Export Authority (AIDEA) and the state of Alaska should be considered a single "plaintiff."[1] The purpose of section 1500 is to prevent plaintiffs from maintaining concurrent claims against the United States in multiple courts. Importantly, as the Supreme Court has made clear, "Congress did not intend the statute to be rendered useless by a narrow concept of identity." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011). The legislative framework and judicial precedent demonstrate that AIDEA, as a statutory instrumentality of the state, does not exist and act independently, but as an integral arm of the state. The overlapping legal identities and functions, as substantiated by the roles assigned to AIDEA and its financial and operational integration with the state, further affirm that any legal action initiated by AIDEA effectively

---

[1] In the alternative, AIDEA should be considered an assignee of Alaska. The assignee prong of section 1500 is rarely litigated, but the limited case law indicates that AIDEA is an assignee of the state. *See Klamath Irrigation Dist. v. United States*, 113 Fed. Cl. 688 (2013); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 103 Fed. Cl. 660 (2012). Property (real property and significant monetary infusions) and rights (the issuance of tax-free bonds) has been transmitted to AIDEA by the state. Economic Development Financing, *available at* https://www.akleg.gov/basis/get_documents.asp?session=32&docid=81380.

represents an action by the state of Alaska.  Thus, AIDEA's suit in district court and Alaska's subsequent claim in this Court cannot be viewed as initiated by separate plaintiffs; rather, they are concurrent claims by a single legal entity—the state of Alaska.

A.    State Law Demonstrates A Unity Of Identity Between Alaska And AIDEA

Plaintiff erroneously asserts that it "is contrary to state and federal law" that AIDEA "should be considered the state of Alaska." Pl. Br. at 10.  But a phalanx of precedent establishes the contrary.  Indeed, the statutory scheme explicitly says as much: AIDEA is an "instrumentality of the state with powers to incur debt." AS § 44.88.010(a)(9); *see also* AS § 44.88.190(a) (AIDEA "constitutes a political subdivision and an instrumentality of the state").[2]

The Alaska Supreme Court, in a long line of cases dealing with similar state-created corporations, has agreed that such public corporations are arms of the state.  Plaintiff claims that AIDEA and Alaska are distinct because a statutory provision states that the AIDEA is granted a separate legal identity. Pl. Br. at 10.  The Alaska Supreme Court has found this line of reasoning unpersuasive. *See DeArmond v. Alaska State Dev. Corp.*, 376 P.2d 717, 724 (Alaska 1962) (explaining that the "fact that the statute declares that the corporation shall have a legal existence independent of and separate from the state . . . is nothing more than a declaration of the legal relationship that most corporations have with respect to their creators.").

In fact, numerous state-created entities with "independent legal existence" provisions

---

[2]  Conveniently, plaintiff largely ignores these explicit statutory provisions, except to imply that AIDEA is subject to the limited exceptions recited in the statute—which it is clearly not.  Plaintiff even cites case law stating that the mere creation of an entity of the state does not make that entity an instrumentality of the state. Pl. Br. at 10 (quoting *Alaska Comm. Fishing & Agric. Bank v. O/S Alaska Coast*, 715 P.2d 707, 711 (Alaska 1986)).  Be that as it may, the statute explicitly identifies AIDEA as an instrumentality and political subdivision of the state.

have been recognized as arms of the state by the Alaska Supreme Court.  In *DeArmond*, the court identified the Alaska State Development Corporation (ASDC)—a corporation also created by state statute, similar in characteristics and purpose to AIDEA—as a state instrumentality.  Like AIDEA, the state created ASDC to make development loans for business and industry; the statute creating ASDC included a provision specifically designating it as a "an instrumentality of the state within the Department of Commerce, but [with] a legal existence independent of and separate from the state."  *Id.*  Noting that a state agent was made the director, the governor appointed *all* of the remaining directors, and ASDC reported annually to the governor and legislature, the court concluded that ASDC was an arm of the state, operating "within the Department of Commerce[.]"  *Id.* at 724–25 (internal quotation marks omitted).

Similarly, the court found the Alaska State Housing Authority (ASHA) to be a state agency for purposes of the Alaska Administrative Procedure Act.  *See Alaska State Hous. Auth. v. Dixon*, 496 P.2d 649 (Alaska 1972).  As with ASMA, the governor had full control over appointing its directors, and the legislation placed ASHA expressly "within" the Commerce Department.  *Id.* at 651.  In *University of Alaska v. National Aircraft Leasing, Ltd.*, 536 P.2d 121 (Alaska 1975), the court concluded that, even though the university held title to real property and can sue and be sued in its own name, its "independent" corporate status did not prevent a finding that it was an arm of the state, explaining that "the guideposts for such an inquiry are to be found more in political and functional realities than in organizational formalities."  *Id.* at 125–26.  The court also held in *Alaska State Operated School System v. Mueller*, 536 P.2d 99 (Alaska 1975), that, despite its separate corporate status, the Alaska State Operated School System's (ASOS) deep integration with state statutes and direct oversight by state officials cemented its status as a state instrumentality.  This was despite ASOS's capacity to sue, and its powers to hold property,

contract, adopt administrative rules, and accept governmental grants or loans.  *Id.* at 101.

These cases collectively illustrate that these state-created entities, though perhaps *de jure* independent in their operations, are the same as the state (*i.e.*, are instrumentalities of the state), subject to significant state control and integral to governmental function.  The facts of these enumerated cases closely parallel AIDEA, which: 1) is a "political subdivision within the Department of Commerce, Community, and Economic Development, but with a separate and independent legal existence[,]"  AS § 44.88.020; 2) has all board members appointed by the governor, including five directors and the commissioners of the Department of Revenue and Department of Commerce,[3] AS § 44.88.030; 3) has been represented by the state attorney general in litigation, Nathaniel Herz, *Response to Public Records Request* (Apr. 12, 2023), *available at* http://www.documentcloud.org/documents/23782265-nathaniel-herz-prr-response-41223; 4) regularly receives loans from the state, Division of Legislative Audit, Alaska Legislature, Dept. of Commerce, Community, and Economic Dev., AIDEA, *Audit Control No. 04-30093-20* (2020), *available at* http://legaudit.akleg.gov/slug/04-30093-20-2/; and 5) receives substantial financial support from the state including, but not limited to, seed money, appropriations from the revolving fund, substantial loans, and real property.  *See* AIDEA, *Cost and Financial Performance Report 2022* (2022), *available at* http://static1.squarespace.com/static/62cca323b85faf15e3ca3ce8/t/63320dbc1620c750ff2654f5/1664224705415/FINAL_AIDEA+Cost+and+Financial+Performance+Report_+2022.pdf.  Furthermore, the state has acknowledged that involvement by AIDEA in financing religious organizations would constitute state action and breach the Establishment Clauses of the Constitution.  *See* Alaska Assistant

---

[3] In fact, the governor has authority to break tie votes.  AS § 44.88.050(a).

Attorney General, *Religious Organizations Participating in AIDEA Programs*, (Jan. 12, 2000), *available at* http://law.alaska.gov/pdf/opinions/opinions_2000/00-001_661970624.pdf. Plaintiff's claim that the Alaska statutes "give AIDEA authority to act apart from the State itself," Pl. Br. at 11, is thus belied.  AIDEA is clearly an arm of the state.

Furthermore, while plaintiff claims that AIDEA's real property cannot be considered "land owned in fee by the state" Pl. Br. at 11-12 (citing AS § 44.88.190(b)), all property and assets of the AIDEA are ultimately considered state assets.  AS § 44.88.140(a) ("Except as provided in AS [§] 29.45.030(a)(1), the real and personal property of the authority and its assets, income, and receipts are declared to be the property of a political subdivision of the state").  Plaintiff also states that AIDEA's "funds, income, or receipts [] may not be considered or constitute money of the state[.]".  Pls.' Resp. at 12.  But this is contradicted by reality, given that the state legislature regularly threatens to raid the AIDEA's coffers frequently enough that the S&P has tanked AIDEA's credit rating.  Cost and Financial Performance Report 2022 at 13.

To plaintiff's claim that AIDEA "cannot pledge the faith or credit of the state" because it is not an arm of the state, Pl. Br. at 12 (citing AS § 44.88.120(b)), multiple cases have held that, even with provisions purportedly limiting the state's liability, the state can ultimately still be liable for judgment against entities like AIDEA.  *See, e.g., Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 380-81 (9th Cir. 1993).  Alaska state law thus firmly anchors that AIDEA is an arm—or, as explicitly stated, an instrumentality—of the state.[4]

---

[4]  Plaintiff claims that AIDEA's initiation of its own suits against the Government concerning the same oil and gas leases, without the state as an original party, means that it is a separate entity from the state.  But simply because AIDEA and Alaska have deliberately selected a divide-and-conquer approach (perhaps in a specific effort to avoid dismissal under section 1500) does not mean that they should not be considered the same plaintiff.

B.    Federal Law Also Demonstrates That AIDEA Is An Arm Of The State

While there is no uniform test under Federal law for determining whether an entity is an arm of the state, the most common factors are: 1) the state's intent as to the status of the entity and the functions performed by the entity; 2) the state's control over the entity; and 3) the entity's overall effects on the state treasury. *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F3d 868, 873 (D.C. Cir. 2008). The third factor merits significant consideration. *See Hess v. Port Auth. Trans-Hudson Corp.,* 115 S. Ct. 394, 406 (1994) ("[i]f the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise?"); *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 431 (1997) ("[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant").

Employing these factors, AIDEA equates to the state of Alaska.[5] The state's control over AIDEA is evident; as described above, AIDEA's leadership consists entirely of members appointed directly by the governor, and it includes two state agents—the commissioners of Revenue and Commerce. Looking to the third factor, the case law guides a finding that AIDEA is an arm of the state. In *Alaska R.R.*, the Alaska Railroad Corporation (ARRC), a public corporation created by state statute, was found to be an arm of the state. *Alaska R.R.*, 5 F.3d at 380. Similar to AIDEA's enabling statute, the entity was defined as liable for judgments against it. *Id.* Even so, the Court explained that, because the Alaska Railroad is an "essential fixture in the lives of thousands . . . Alaskans", *id.*, "if faced with a large money judgment, ARRC would be compelled to turn to legislative appropriation in order to remain in business, and the

---

[5] For this part of our analysis, we primarily rely on Ninth Circuit case law, as that circuit has had the opportunity to examine the issue with an eye toward Alaska state law.

legislature would have to respond favorably so that the 'essential' transportation function would continue to be performed and to protect the state's very substantial investment in the Alaska Railroad." *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 834 F. Supp. 1216, 1220 (D. Alaska 1991), *aff'd*, 5 F.3d 378 (9th Cir. 1993). As with ARRC, if AIDEA were to face a large judgment, the state would almost certainly be obligated to step in and provide for legislative appropriation to protect the myriad infrastructure, critical transportation, and public utilities, as well as prop up its multi-hundred-million-dollar loan portfolio that citizens and businesses rely on. Loan Dashboard Report, *AIDEA Revolving Fund*, AIDEA Board Meeting, October 25, 2023, Agenda, *available at* http://www.aidea.org/Portals/0/Meeting%20Docs/2023BoardMeetings/102523/7._B_Loan_Dashboard_Report_10252023.pdf. Indeed, the Alaska Supreme Court has described AIDEA as reaching the threshold of a public utility. *Alaska Fed'n for Cmty. Self-Reliance v. Alaska Pub. Utilities Comm'n*, 879 P.2d 1015, 1017-19 (Alaska 1994).

With regard to the first factor—the functions performed by the entity—the D.C. Circuit concluded that the functions performed by the Puerto Rico Port Authority were "not readily classified as typically state" functions, but that because its enabling act had a state-wide purpose,[6] the factor still "point[ed] in the direction of arm-of-the-[state] status." *P.R. Ports Auth.*, 531 F.3d at 875-76 (internal quotation marks omitted). Here, AIDEA's enabling act— similar to the one in *P.R. Ports Auth.*, states its purpose "is to promote, develop, and advance the general prosperity and economic welfare of the *people of the state*[.]" AS § 44.88.070 (emphasis added). Accordingly, the first factor also points to AIDEA as an arm of the state.

*Alaska Ret. Mgmt. Bd. on behalf of Alaska Pub. Employees' Ret. Sys. v. Mercer (US),*

---

[6] This purpose is to promote the general welfare and increase commerce and prosperity for the benefit of the people of Puerto Rico. *P.R. Ports Auth.*, 531 F.3d at 875.

*Inc.*, No. 1:08-CV-0002-HRH, 2008 WL 11338014 (D. Alaska Nov. 7, 2008), is also instructive. In that case, the district court held that the Alaska Public Employees' Retirement System (PERS) was an arm of the state.  *Mercer*, 2008 WL 11338014, at \*5 (holding that "plaintiff's function involves a matter of state-wide concern is also evident in the fact that the State of Alaska has defined the purpose of both PERS and TRS in statute").  The court further held that PERS was created by statute and was "established in the Department of Revenue," its trustees are appointed by the governor, almost half of its trustees are state employees, and it is subject to statutory reporting requirements both to the legislature and Governor.  *Id.* at 6.  All this mirrors AIDEA, and militates against viewing AIDEA as anything but an arm of the state, performing essential governmental functions and operating under substantial state oversight.

To the extent plaintiff claims otherwise, the arm-of-the-state analysis under the Eleventh Amendment is salient, particularly given the paucity of case law in the context of section 1500. Eleventh Amendment cases properly guide courts' reasoning in other areas of law.  *See, e.g., Alaska Ret. Mgmt. Bd. on behalf of Alaska Pub. Employees' Ret. Sys. v. Mercer (US), Inc.*, No. 1:08-CV-0002-HRH, 2008 WL 11338014 \*2 (D. Alaska Nov. 7, 2008); *Befitel v. Global Horizons, Inc.*, 461 F. Supp. 2d 1218, 1221 (D. Hawaii 2006); *M-K Engineering Co. v. Alaska Power Auth.*, 662 F. Supp. 303, 304 (D. Alaska 1986) ("the analysis of a state agency's status is virtually identical whether the case involves a determination of citizenship for diversity jurisdiction or immunity from suit under the eleventh amendment.") (cleaned up); *Univ. of S. Fla. Bd. of Trustees v. Co Mentis, Inc.*, 861 F.3d 1234, 1235 (11th Cir. 2017); *Adden v. Middlebrooks,* 688 F.2d 1147, 1150 (7th Cir. 1982); *Blake v. Kline*, 612 F.2d 718, 726 (3d Cir. 1979).

This makes sense; if an entity such as AIDEA can hide behind the shield of state

immunity to evade litigation, it is illogical for it to enjoy the advantages typically reserved for private entities.  This would contradict the principles of res judicata underpinning section 1500.  *See Tohono*, 563 U.S. at 315-316.  Section 1500 was intended to limit the ability of plaintiffs to file duplicative litigation against the United States.  *Id.*  By allowing state legislatures to evade the requirements of section 1500 by designating what is otherwise clearly an arm of the state as "separate and independent," states are given the perverse incentive to create even further pseudo-state chimeras that effectively function as the state, except in name.  In *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), the Supreme Court addressed the inconsistency and unfairness that could result from allowing a state to possess such capacities and immunities in tandem.  The Court explained:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.  And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.

*Id.* at 619.  The Court's reasoning applies here.  It would be inconsistent, and lead to unfair results, to allow AIDEA to both shield itself from litigation by claiming immunity as an arm of the state but also claim that, for purposes of section 1500, it is a separate entity.  The Court should not condone such an approach.

> C.    AIDEA Is In Privity With The State Of Alaska For Purposes Of Res Judicata

Plaintiff claims that the Court should not look toward res judicata principles—specifically the concept of privity—in assessing whether AIDEA equates to the state for section 1500 purposes.  But this belies that the Supreme Court and Federal Circuit have held that section 1500 is informed by res judicata principles.  *See Tohono*, *Trusted Integration, Inc. v. United*

*States*, 659 F.3d 1159, 1163-64 (Fed. Cir. 2011).  Plaintiff contends that we expand the statute to say "plaintiff or his assignee or someone else with whom plaintiff is in privity."  Pl.' Br. at 13.  But we are simply adhering to the directives set forth in *Tohono* and *Trusted Integration*.

Given that *Tohono* employs principles of res judicata to clarify the phrase "for or in respect to which" based on the operative facts of cases, it is only logical to similarly apply res judicata principles in defining what constitutes the immediately following term: "the plaintiff."  *Id.* at 319;  *see also Trusted Integration*, 659 F.3d at 1160 ("it is clear that we must [ ] not view § 1500 narrowly[.]").  As to plaintiff's argument that "plaintiff" is unambiguous—this argument is myopic.  Words often have deeper applications extending beyond their base meaning.  For example, "one of the United States" has been interpreted to encompass not just to states by their own name, but also "some agencies exercising state power."  *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 400-01 (1979).  Moreover, plaintiff's narrow position would foreclose, without the opportunity for fact-specific analysis, a finding that, for example, iterations of the same company are the same "plaintiff" just because they have slightly differing nomenclature or one is the parent company of the other with direct majority ownership.[7]  This would lead to an absurd outcome that goes against the principles outlined in *Tohono* and *Trusted Integration*, and allow plaintiffs to easily evade what section 1500 was intended to capture.  Res judicata principles should be considered.[8]

Plaintiff argues that, even considering res judicata principles, "AIDEA's and the State's

---

[7]  These, of course, are not the only ways in which plaintiffs might seek to avoid the strictures of section 1500.

[8]  Plaintiff also observes that we have not cited a case where this Court has held that section 1500 applies to plaintiffs with different names that are in privity with one other.  But we acknowledged in our motion that there is a dearth of case law on this matter—going both ways.

interests are not only distinct—they are divergent: AIDEA is the *lessee* of the leases, while the State is entitled to the *lessor's* share of royalties." Pl. Br. at 15. As an initial matter, plaintiff cannot demonstrate that this distinction matters for determining unity of identity for section 1500 purposes. In any event, this contention is disconnected from reality; the state not only receives the *lessor's* share of royalties but also a significant portion of the *lessee's* share as well, as AIDEA must pay 25-50 percent of their net revenues as a dividend back to the state every year. AS § 44.88.088. Since 1997, AIDEA has declared more than $407 million in dividends to Alaska's general fund. AIDEA*, FAQ*, *available at* http://www.aidea.org/Quick-Links/FAQ. To claim that the interests of AIDEA and Alaska are not aligned, *let alone divergent*, is farcical, even without considering the fact that the Alaska treasury receives significant infusions from AIDEA's revenue. Both Alaska and AIDEA have a vested interest in these oil and gas leases, and both may have benefited financially by those leases not getting canceled.[9] To plaintiff's argument that the same party cannot be both a direct party and a third-party beneficiary of that same contract, Pl. Br. at 15, whether or not that is true for contracting purposes has little to do with whether AIDEA and Alaska share a unity of identity for purposes of section 1500.

    D.    <u>Diversity Jurisdiction Cases Do Not Aid Plaintiff</u>

Plaintiff relies on diversity jurisdiction cases in contending that AIDEA is not equivalent to the state. Pl.' Br. at 17. This reliance is unavailing. As demonstrated above, AIDEA is clearly an arm of the state. And even plaintiff acknowledges that, in the context of diversity jurisdiction, "a state cannot be its own 'citizen,' . . . unless it is simply *the arm* or alter ego of the State." Pl.' Br. at 17 (emphasis moved). Plaintiff cites certain examples of state-created entities

---

[9] As plaintiff admits, the state intervened on AIDEA's side in *AIDEA I*, indicating the alignment of interests regarding the leases.

that have been found to be a citizen of the state, rather than the state, for diversity jurisdiction purposes.  *Id.*  But it does no more than name the types of entities, and does not demonstrate that the relationship between AIDEA and Alaska is such that AIDEA should not be considered an arm of the state.  Certainly, plaintiff cannot override the multitude of cases in which Alaskan entities similar to AIDEA have been found an arm of the state.  Plaintiff's characterization of public corporations with "sufficiently independent character" does not align with the structure, operations, and purpose of AIDEA, as described above.  *Id.*  AIDEA is an arm of the state; as such, it is the same as the state for purposes of section 1500.

II.    *AIDEA II* And This Case Are Based On Similar Operative Facts

Plaintiff contends that section 1500 does not apply because this case and *AIDEA v. Dep't of Interior*, No. 3:24-cv-00051-SLG (D. Alaska) (*AIDEA II*), are not based on similar operative facts.  Plaintiff relies on factors that are not binding, or even well-established, and ignores the binding principle that "the legal theories asserted before the district court and the CFC are irrelevant to whether the claims arise from substantially the same operative facts."  *Trusted Integration*, 659 F.3d at 1166.  The crucial inquiry is whether the claims are premised on "nearly identical conduct."  *Id.* at 1165.  This is a simple question, easily answered in the affirmative.

Here, plaintiff raises three counts:  breach of contract, breach of duty of good faith and fair dealing, and a taking.  Each of these counts is premised on DOI's cancellation of the oil and gas leases.  *See* Compl. ¶¶ 66-67, 73, 77 (all establishing that the conduct underlying the claims was the cancellation of the leases).  In *AIDEA II*, plaintiff claims that the cancellation of AIDEA's leases was unjustified and contrary to law, as well as in violation of DOI regulations.

*See* Govt. MTD Exh. A ¶¶ 46-63, 69-73.[10]  Of course, these claims are based on the same conduct as here—DOI's cancellation of the oil and gas leases.  Whether the issues of law are the same or even similar is not the point.  Even so, plaintiff's discussion of certain DOI regulations in the context of the breach-of-contract claim only highlights that even the legal theories in the two cases have striking similarities.  According to plaintiff, DOI breached contracts because it rescinded them in purported violation of certain regulations.  Pl. Br. at 26.  In *AIDEA II*, plaintiff devoted an entire count to the very same argument—that DOI's cancellation of the leases violated certain regulations.  Govt. MTD Exh. A. at ¶¶ 69-73.

Plaintiff claims that, because "[t]he legal questions at the heart of" *AIDEA II* and this case will require different evidence to resolve the legal disputes, the cases are not based on the same operative facts.  Pl. Br. at 23.  To do so, however, plaintiff focuses solely (and incorrectly) on the amount of *damages* it has allegedly suffered, not the "legal questions at the heart of" this matter, which focus on whether the Government actually breached a contract, breached the duty of good faith and fair dealing, or committed a taking by cancelling the oil and gas leases.  The amount of damages plaintiff allegedly suffered only matters if and when plaintiff proves entitlement based

---

[10]  *AIDEA II* raised five counts.  The first two (the cancellation of the leases being unjustified and unlawful) are clearly based on the same conduct—the cancellation of the leases. Govt. MTD Exh. A ¶¶ 46-63.  A third count—the purported violation of DOI regulations—is not only based on the same conduct, but essentially *mirrors* plaintiff's argument, made in its response, that DOI breached the contract by allegedly failing to comply with the same regulations cited in *AIDEA II*.  *See* Pl. Br. at 26.  The other two—failure to provide due process and failure to comply with 5 U.S.C. § 588—are also based on the same conduct, in that DOI's cancellation of the leases undergirds each count.  However, to the extent the Court finds that these final counts are based on different conduct, this would not undercut our argument.  Plaintiff cites no authority for the proposition that the earlier-filed district case cannot be broader in scope than the instant case.  So long as the conduct underlying the claims in *this* case are not outside the scope of the conduct underlying the claims in *AIDEA II*, section 1500 still functions as a bar.

on its actual substantive legal theories. And it belies common sense to argue that whether DOI had inherent authority to cancel improperly issued leases—and whether those leases were improperly issued—is divorced from the legal theories plaintiff advances here, particularly with respect to breach of contract and good faith and fair dealing. Plaintiff also complains that "similar verbiage" in the *AIDEA II* and underlying complaints is not sufficient to demonstrate that they are based on substantially similar operative facts. Pl. Br. at 24. But, again, DOI's cancellation of the oil and gas leases is the factual linchpin for the claims in both *AIDEA II* and this case. Thus, it is not only that the two complaints are based on the same set of factual allegations, but that the counts within them are premised *on the same conduct*.

III.    Plaintiff Does Not Have A Viable Breach-Of-Contract Claim

      Plaintiff asserts that it has pled viable breach-of-contract claims with regard to the Knik Arm and Regenerate Alaska leases, *even though those leases were rescinded and canceled at the request of the lessees*. Plaintiff primarily argues that DOI's regulations prevented it from rescinding the leases—even if both parties agreed—except in certain circumstances allegedly not applicable here.[11] But, as we explained in our summary judgment brief in *AIDEA II*, those regulations do not apply in the manner plaintiff suggests, nor do they provide a legal loophole for plaintiff to allege that a mutual cancellation of a contract can constitute breach.[12] As we stated, the regulations plaintiff relies on only apply in the context of lease operations; they do nothing to

---

[11] Plaintiff contends that DOI mischaracterized the cancelation as a "relinquishment." Pl. Br. at 26. While, for page limit reasons we do not address this issue, we are not conceding that the cancellation was not a relinquishment, or that under the relinquishment provision of the regulation, Alaska was entitled to any accrued payments at the time of the cancellation.

[12] Indeed, the regulations do not imply that cancellation of the leases outside the situations specified therein constitutes a breach, or that the lessee would be entitled to any remedy outside that provided by the APA.

curtail DOI's inherent power to cancel leases in other situations, including at a lessee's request.

Moreover, the point of the regulations is to address lessee noncompliance, not an issue here.  As

we explained in *AIDEA II*:

> Section 3136.3 addresses "[c]ancellation of leases" and contains two subsections.
> *See* 43 C.F.R. § 3136.3 (2024).  AIDEA fixates on the second addressing
> "[p]roducing leases or leases known to contain valuable deposits of oil or gas[.]"
> *Id.* at (b).  But this must be read in conjunction with the first subsection,
> which clarifies that nonproducing leases may be cancelled "by the authorized officer"
> for lessee failure to comply with requirements under statute, regulation, or terms
> of the lease.  *Id*. at (a).  Properly interpreted, Section 3136.3 speaks only to a
> situation where DOI seeks to address lessee noncompliance through cancellation,
> which for nonproducing leases it may do administratively but for producing leases
> it must do by initiating judicial enforcement proceedings.  Operations under
> AIDEA's leases never commenced and the regulations addressing lessee
> noncompliance are therefore inapplicable.

*AIDEA II*, ECF No. 52.  Nothing in the regulations can be read to imply that DOI committed a

breach by mutually agreeing to cancel the leases, or by exercising its inherent powers.

Plaintiff also announces that it now pursues a theory of anticipatory repudiation.  Pl. Br.

at 27.  But plaintiff has not pled an anticipatory repudiation claim in its complaint.[13]  Thus, the

Court need not consider the issue further.  In any event, plaintiff fails to state a plausible claim.

The characterized repudiation must be a "'distinct and unequivocal absolute refusal to perform

the promise' that 'must be treated and acted upon as such by the party to whom the promise was

made.'"  *Amber Res. Co. v. United States*, 538 F.3d 1358, 1369 (Fed. Cir. 2008) (quoting

*Dingley v. Oler*, 117 U.S. 490, 503 (1886)).  Plaintiff can point to no unequivocal absolute

---

[13]  Anticipatory repudiation is a distinct claim from one alleging breach of contract.  As
the Supreme Court held in *Franconia Associates v. United States*, 536 U.S. 129 (2002), a
repudiation occurs before the time fixed in the contract for performance, and a repudiation ripens
into a breach prior to the time for performance only if the promisee elects to treat it as such.  *Id.*
at 143.  Here, there is no indication Knik Arm and Regenerate Alaska treated the voluntary
cancellation of the contract as a breach.

refusals to perform; indeed, it cannot even point to a "mere assertion" that DOI would not perform, which is still short of the level required to show anticipatory repudiation. *United States v. Dekonty Corp.*, 922 F.2d 826, 828 (Fed. Cir. 1991) (quoting *Dingley*, 117 U.S. at 503). All plaintiff alleges is that the leases would be subject to a moratorium, "orders suspending all development activities under the program and official threats that the leases *could be cancelled*." Pl. Br. at 27 (emphasis added). Plaintiff's own characterization belies that DOI never unequivocally and distinctly stated it would refuse to perform the contract. Plaintiff's arguments do not detract from the undisputed fact that Knik Arm and Regenerate Alaska *asked* that DOI cancel the leases, and that DOI did so at their behest. Plaintiff also cites no authority for the proposition that a breach can occur when both contracting parties have agreed to the cancellation of a contract prior to the start of work under the contract.

## IV.    There Is No Plausible Claim For A Breach Of The Duty Of Good Faith And Fair Dealing

Plaintiff contends that it has stated a plausible claim for the breach of the duty of good faith and fair dealing.[14] This is not so. The only argument plaintiff offers is that the Government "engaged in extended conduct—the indefinite moratorium and suspension of all leasing activities, followed by threats to cancel the leases . . . and ultimately cancellation of the leases— that completely deprived the lessees of any ability to develop the leased lands and thwarted the State from receiving any of the promised benefits as a third-party beneficiary." Pl. Br. at 30 (cleaned up). Even assuming *arguendo* the truth of plaintiff's factual allegations, they fall short of the level required to establish a plausible good-faith-and-fair-dealing claim. Based on its own

---

[14]   In making this argument, plaintiff observes that we do not dispute that the state of Alaska is a third-party beneficiary. Pl. Br. at 29. While we do not dispute this for purposes of a motion to dismiss, we do not concede that Alaska is a third-party beneficiary for contractual purposes, and reserve the right to contest this at a later juncture, should the Court not dismiss.

allegations and exhibits, all plaintiff can show is that DOI temporarily halted activities related to

the leases in order to undertake additional environmental analysis due to "defects in the

underlying record," Pl. Br. Exh. A, and that DOI eventually canceled the leases, as they had been

"improperly issued due to pre-leasing legal defects."  Compl. Exh. E at 2.  It does not appear that

plaintiff ever even alleged in its complaint that DOI "threatened" to cancel the leases—the only

applicable inference is a statement that the suspension "provided that the additional

environmental analysis would 'determine whether the leases should be reaffirmed, voided or

subject to additional mitigation measures.'"  Compl. ¶ 35 (quoting Compl. Exh. D).  None of this

is sufficient to plausibly claim that DOI interfered with performance of the contract or that the

cancellation of the contract was *specifically designed* to reappropriate benefits that Alaska may

have expected.  *See Century Expl. New Orleans, LLC v. United States*, 110 Fed. Cl. 148, 174-175

(Fed. Cl. 2013) (citing *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005);

*Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829 (Fed. Cir. 2010)).

Indeed, good faith and fair dealing claims may not even apply when dealing with the

early cancellation of a contract (and especially a mutually cancelled one).  The Federal Circuit

has held that the duty of good faith and fair dealing is imposed in the "performance and

enforcement" of a contract.  *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019).  That

good faith and fair dealing claims are limited to contract performance and enforcement of its

terms is further supported by the Federal Circuit's admonition that the duty "cannot expand a

party's contractual duties beyond those in the express contract or create duties inconsistent with

the contract's provisions."  *Precision Pine*, 596 F.3d at 831.  Rather, "any breach of that duty has

to be connected . . . to the bargain struck in the contract."  *Metcalf Constr. Co. v. United States*,

742 F.3d 984, 994 (Fed. Cir. 2014); *see also id.* at 991 ("The implied duty of good faith and fair

dealing is limited by the original bargain; it prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value."). Put differently, the duty must be "keyed to the obligations and opportunities established in the contract." *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014). Here, the contracts were canceled prior to any work being performed; thus, there was no opportunity for DOI to interfere with performance or otherwise act inconsistently with the contract. To hold that plaintiff has sufficiently pled a good-faith-and-fair-dealing claim would be to stretch the duty far beyond the obligations contemplated in the contract, and convert it into an "an amorphous catch-all," which this Court has guarded against. *Bell/Heery v. United States*, 106 Fed. Cl. 300, 312 (2012) (quotation marks omitted)

V.     Alaska's Takings Claim Does Not Reach The Threshold Of Plausibility

Plaintiff fails to plead a plausible takings claim. First, plaintiff cannot sufficiently allege a cognizable property interest. Plaintiff argues that the royalties are a right in real property; however, as we explained in our motion, royalty payments to the state do not constitute a property interest for purposes of a takings analysis.[15] *See Adams v. United States*, 391 F.3d 1212, 1224-25 (Fed. Cir. 2004) (the Government's obligation to pay money is not protected as property under the Takings Clause "because it lacks any foundation in property law"); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339-40 (Fed. Cir. 2001) (Agreeing with the "prevailing view" that "mere imposition of an obligation to pay money, as here, does not give rise to a claim under the Takings Clause of the Fifth Amendment."). And, while the

---

[15] Even if the Court found that the royalty payments could constitute a cognizable property interest, plaintiff cannot establish that the other monies it seeks are anything other than the obligation to pay money.

Supreme Court has not squarely addressed the issue of royalties, it has held that a reduction in payments does not amount to a taking of real property. *See United States v. Sperry Corp.*, 493 U.S. 52, 62 n. 9, 110 S. Ct. 387, 395 n. 9, 107 L.Ed.2d 290 (1989) ("[I]t is artificial to view deductions of a percentage of a monetary award as physical appropriations of property. Unlike real or personal property, money is fungible.").

Plaintiff relies on *Devon Energy Corp. v. United States*, 45 Fed. Cl. 519 (1999) for the idea that royalty interests can be subject to a takings claim. Pl. Br. at 32. This reliance fails for more than one reason. First, *Devon Energy* predates the Federal Circuit's decisions in *Adams* and *Edison Co.* Second, it does not appear that the issue of whether royalties constitute property for takings purposes was squarely in front of the Court in *Devon Energy*. Rather, the Government in that case challenged the takings claim on grounds of ripeness and plaintiffs' failure to demonstrate that certain lease transfers had been approved by DOI. *Id.* at 530. As such, there was no cause for the Court to address the issue.[16] Plaintiff cannot demonstrate that royalties—divorced from other property interests such as operating or mining rights—constitute anything other than an obligation to pay money.[17]

---

[16] Similarly, another case plaintiff relies on—*Benchmark Resources Corp. v. United States*, 74 Fed. Cl. 458 (2006)—does not support its contention. In that case, the alleged protected property interest was "the ownership of coal mining rights in the [p]roperty." *Id.* at 473. While plaintiffs contended they had a right to royalties in the coal, such rights were tangential to the mining rights interest. *Id.* at 475. Moreover, it is unclear that the Government contested whether royalties could constitute a real property interest.

[17] Plaintiff also points to an IRS regulation defining royalty interests as property. Pl. Br. at 32. But whether royalty interests are property for income tax purposes has little bearing on whether they constitute a cognizable property interest for takings purposes. Plaintiff points to no authority linking the two, only citing for support a 1991 case mentioning the regulation *in the context of an income tax refund*, not a taking.

Plaintiff also asserts that it can concurrently assert both a takings claim and contract claim, citing *Stockton East Water Dist. v. United States*, 583 F.3d 1344 (Fed. Cir. 2009), in support.  Pl. Br. at 33.  But plaintiff completely ignores the Federal Circuit's more recent decision in *Piszel v. United States*, 833 F.3d 1366 (Fed. Cir. 2016), where the Court stated that, "when the government itself breaches a contract, a party must seek compensation from the government in contract *rather than under a takings claim*."  *Id.* at 1376 (emphasis added). Plaintiff also claims that *Snyder & Associates Acquisitions LLC v. United States*, 133 Fed. Cl. 120 (2017), means that a plaintiff can proceed under a takings claim if it has a separately existing property interest, and that it had a separate property interest created by the Tax Act.  *Id.* at 126. First, plaintiff never claims in its takings count that its property interest derived from the Tax Act and not the leases.  *See* Compl. ¶¶ 74-78.  Second, the Tax Act provisions plaintiff relies on are explicit that the royalty interest (assuming plaintiff has a property interest, which it does not) is grounded in contract, and *not* a separately existing property interest.  *See* Tax Act § 20001(b)(4) ("the royalty rate *for leases* . . . shall be 16.67 percent.") (emphasis added).  Moreover, *Snyder* explains that, when a plaintiff claims that the Government breached a contract, the amount of the contract damages alleged by the plaintiff "is also the property the plaintiff claims was taken"— exactly the scenario here.  *Id.* at 126.

## CONCLUSION

For these reasons, and those stated in our motion, we respectfully request that the Court dismiss Alaska's complaint for lack of subject-matter jurisdiction and failure to state a claim.


Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Sosun Bae
SOSUN BAE
Senior Trial Counsel
PIERCE ANON
Law Clerk
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7568
Facsimile: (202) 514-8640
E-mail: sosun.bae@usdoj.gov

Dated: January 17, 2025                    *Attorneys for Defendant*